I'm here for the fourth case this morning, Faucett v. United States. I'm here for the fifth case this morning, Faucett v. United States. Good morning. May I please have the floor? This case is about ineffective assistance of counsel. Mr. Faucett's defense counsel allowed him to plead guilty without a plea agreement after defense counsel failed to investigate the facts relating to his involuntary intoxication. Involuntary intoxication would have served as a defensive trial, Mr. Faucett's only viable defense, and certainly would have served as a mitigation of sentence. His prejudice, Mr. Faucett. Mr. Faucett therefore requests that this court vacate his plea and his sentence and remand it for trial, or at least vacate his plea, his sentence, and remand it for a new sentencing period. At the very minimum, Mr. Faucett requests that his case be remanded to the district court for the eventual year that he never received. The first key reason that the district court should be reversed is that Mr. Faucett's defense counsel did not conduct a reasonable investigation. At the time of his offenses, Mr. Faucett was taking a substantial quantity of psychotropic medications, which were prescribed to him by doctors, many of whom were able to plead guilty for various felonies. Counsel, I understood your argument to focus in particular on Ambien and Vilify. Is that correct? Those are certainly two of the more troubling prescriptions on the record, but there were a number of other prescriptions as well. Well, what was he taking at the time of the offenses? It varied over time. According to the PSR and the revised PSR. I'm looking at the Medicaid list of prescriptions, and Ambien and Vilify don't show up until months or a year later. My understanding is that he was taking, certainly, and I apologize if some of these were just the generics, but I believe he was taking Adderall, Paxil, Xanax, and Trazodone, at least for part of the offenses. They're over the same for a couple months. I thought your strongest argument, frankly, from the briefs, was based on side effects of Ambien and Vilify, not related to interactions with alcohol voluntarily consumed. I believe that that is the case, Your Honor. My understanding, and I don't want to be incorrect on the record, but my understanding is that he was taking Ambien and Vilify from these doctors at some point. At some point, that's true. They show up on the list in October and November. Well, Ambien, Zolpidem, and Tartrate shows up in October of 2010, months after the second of the offenses, and the Vilify seems to show up first. I'm looking at the short appendix, pages 70, 80, and 90. The Vilify shows up in March of 2011, so it doesn't look like either one of those could be relevant here. Well, that's the case, Your Honor. I would submit that nonetheless, he was taking substantial quantities of other psychotropic medications. Was he a patient of that doctor? He was a patient of the Wagner Medical Clinic for the duration. So these prescriptions extended before the time of the offenses and after the time of the offenses. So he was a prescription of various doctors, including Dr. Marilyn Wagner, who is, I believe— All the prescriptions were out of that clinic, though. That's my understanding. There may have been a few here and there that were not, but the bulk of his medication, the overwhelming bulk, as I understand it, came from his clinic. I was just—with regard to Dan's question, there was no option to buy it illegally, for example, on the street. I'm sorry. No option to buy it illegally on the street rather than through the doctor. He had to go to the doctor for these prescriptions. Counsel, now our time is limited. In your reply brief, if I understood you correctly, you were suggesting that the Federal Defender's Office was ineffective because it failed to detect the criminal activity of this defendant's doctors? Your Honor, I don't think that the case hinges on that. No, I think it's— That's an extraordinary claim. No, I think it's diagnostic of the fact that— and this was in response to the Governor's argument that there was simply no factual way that they were going to write flags regarding the Wagner Medical Clinic, and I think that's inaccurate. I think even if the Wagner Medical Clinic had been perfectly professional, doctors prescribing according to medical norms and taking the best interest of their clients to heart, he could still have been involuntarily intoxicated because he was taking a lot of medications. By which? By which medications? And let me be very specific here, okay? Yes, sir. The claim here is a failure to investigate adequately. Correct. And I understand our case law— please correct me or point me to other threads in there— in our case law to require that such a claim to succeed show what an appropriate investigation would have shown. I believe that's correct, Your Honor, yes. So what do we have here? Well— Showing actual involuntary intoxication. We have Mr. Faust's referrals from the very beginning. His statements that he was suffering memory loss, suffering from impaired cognition, that obliged him—didn't make it difficult for him to work, that obliged him to drop out of college. He has said that in the start. It shows up in both of the PSRs. We have indications that he was taking a substantial quantity of medications. It is, I think, indicative of the fact that those medications were problematic, that they were prescribed by the people they were prescribed by. And that might have been unheard of by an investigation, but the main point is that he was taking all these medications and he was suffering significant memory issues and cognitive issues at the time. He has claimed that. But a defense counsel confronted with this kind of a record needs to make some tough choices. And the defense counsel in this case opted, in essence, to argue for mitigation and repentance, right? And acceptance of responsibility. What would the evidence have looked like to support a true slamming winner of an involuntary intoxication defense here? What it would have looked like would have filled in some gaps that, frankly, exist in the record. And that's why we ask, at a minimum, that he get an evidentiary hearing. Because to the extent the court is not satisfied with what is in front of the court, I think those are things that could have been and should have been developed by an investigation, that they would include a more detailed analysis of precisely what medications he was taking, what the interactions were, and how they contributed to his offenses. Okay. Well, that circles back to my point a moment ago. Ordinarily, I thought to show, to make a claim of ineffective assistance based on inadequate investigation, you have to show what this sufficient investigation would have shown. Well, and I think what we have here are an indication on the record, very clearly, that he was taking a lot of medications that very possibly, very probably there's a reasonable probability that they affect his actions and led him to commit the offenses that he committed, or at least contributed to them, which is a weaker standard under mitigation. The defense counsel had the records in front of him, but there's no indication he ever looked at them. What evidence is there to suggest that the combined effect of these medications, or any one of them on its own, essentially read it to him temporarily and saying, after the time of these offenses, this is a species of insanity defense, diminished capacity defense. He has to enact the Burberson defendant for that kind of defense. It's a very steep hill to climb in almost all cases, and it requires the defendant to show that because of this condition here, the involuntary intoxication, he's unable to understand the nature of the quality of the actions he's committing or appreciate their harmfulness. We have nothing to that effect here. That requires expert testimony. Your Honor, I would respectfully disagree to the extent that I think there are substantial troubling facts on the record that indicate that he had no prior convictions of these sorts of offenses, that the offenses were out of character, and that he was taking all these medications. But to the extent that I have heard... And it was showing no indication of this? Is that what you're saying? I'm sorry, that he... During a period of time that he was taking it, he no adverse indications of the things? No adverse indications of the medications, Your Honor? Yeah, not all bad. Oh, thank you. There is nothing on the record that tells me that, Your Honor. I don't know, but I don't see anything on the record. As to the question of whether or not the evidence is sufficient, I think, one, to point out that for mitigation, the causal link is required significantly weaker. It requires only a contribution, not sole causation. And to the extent that this Court finds those facts unsatisfying, we suggest that that's the result of defense counsel's failure to, as far as we can tell, review the records or consult a medical expert. Well, no, it's the habeas petition's burden to demonstrate that this investigation would have produced a viable defense. And on the record we have here, it's clear that it would not have, because we're not being told that, you know, what he was taking at the time he molested his granddaughter, and over the course of a long period of time, he amassed this massive collection of child pornography, that he was insane for that entire period of time. That's what a viable defense of his nature would have to show, that he was in a psychotic break for that entire period of time. Well, in fairness, I think it would have to show that he was unable to appreciate the wrongfulness or nature of his actions at the relevant time. Right. With respect to the child pornography conviction, that's over a long period of time that he was amassing this massive collection. And at the time of the molestation of the granddaughter, where the evidence shows that he was very calculated about how he did this. I'm not certain that I agree that the evidence shows that he was very calculated about it. I see that my... Well, you can answer the question. Have you had a chance to... No, I have not. And I think that, again, I would stress that there is a difference here, even to the extent that this Court is dissatisfied with whether or not Mr. Fossett's met his burden for the insanity defense. There's a much more forgiving standard for mitigation. And I believe that what we've put in front of the Court certainly suggests that mitigation was a real and perhaps the most compelling form of mitigation, and that it should have been put in front of the District Court and never was. Do we know over what period of time these... the charged images... the images in the charge, over what period of time is there? I don't know for a fact how long the images related to the possession charge. I don't believe we know that. The production charges were separated by, I believe, about a month, maybe three weeks. And there's two instances of those. If there's anything else, I will... Okay. Thanks, John. May it please the Court. Brian Matz with the Government. Fossett has not shown, one, what this investigation could have discovered to have been a defense. Two, what should have spurred his attorney to engage in this investigation. Or, three, any prejudice. Starting with those in reverse order, to even if this would have been a defense, in this case, it would have led to only an instruction. And to accept this defense, as I think Judge Sykes, you pointed out, it would require the jury to accept that over a year, Fossett was insane, but yet functioned in society otherwise. And that insanity only manifested itself whenever he viewed child pornography or his granddaughters there. This is simply not a viable defense. Moving back to the investigation, I think this may be one of the most problematic things with what his attorney should have done. Because there is nothing about this case, whether the crime, his client, or the further investigation that indicated to his attorney that more investigation should have taken place. First, the crime. We know that whenever William Marsh took over this case, he had a client that admitted to a year-long interest in child pornography. He admitted that he methodically positioned his granddaughter and took 59 pictures of her. He remembered specific factors and facts that he conducted during that. So there is nothing there about the crime. What period of time, a similar question I asked you, what period of time did that take, those 59 pictures? The 59 pictures that he took were on two different dates, the two times that his granddaughter stayed with him about a month apart. He also admitted a year-long interest in child pornography, and during that point in time, he viewed child pornography online, downloaded it, and shared it. So there is nothing about the crime itself that would have indicated to any reasonable attorney that this needed to be investigated further. Then you have Fawcett admitting to the police that he remembers specific details about his crimes, molesting his granddaughter in the production of child pornography. Therefore, there is nothing about his client that would have indicated to any attorney that this is an investigation that needed to be conducted. Now, moving on, his attorney actually did investigate, as even Fawcett admitted. He obtained thousands of pages of medical documents. In viewing those, he realized that Fawcett was abusing alcohol and to self-medicate himself, which would have automatically taken him out of the realm of involuntary intoxications. There would have been no reason to continue this fruitless investigation. Moreover, there would have been no indication that anything facially about prescription medicine would indicate that further investigation is required. So I think Fawcett is really here asking for a blanket rule where any attorney that has a defendant taking prescription drugs must do this investigation without any other reason to engage in that investigation, which is really a broad blanket rule asking for fruitless and futile investigations for no purpose. Mr. Roberts, can I ask you, was alcoholism offered as part of the mitigating argument in sentencing in this case? Yes, I would direct the court to pages 6 and 7 of Doctrine 35 of the Sentencing Memorandum. The defense counsel did push alcoholism and pointed out that Fawcett had gone to alcoholics anonymous while in prison and therefore he was a good candidate for rehabilitation, which the district court accepted. I think that is really a fatal point to Fawcett's sentence mitigation argument is that really these were contradictory claims on sentencing. You can either accept responsibility and show remorse or you can claim that your capacity was diminished. And included in the first part, you can argue that, as Fawcett did, I will never commit these acts again out of remorse. Well, you can't really do that if your capacity is diminished based on ADHD, on his depression, his alcoholic abuse. So his attorney had two choices of sentencing and his sentencing choice was very effective. He received what this court called a substantially below guideline sentence of 30 years when his guidelines were alive. So there is no way for Fawcett to show deficient performance or prejudice when it comes to sentencing. And that can be for both or left in a stage where there is nothing that's been established here that would show what the investigation could have or should have established. So there's no reason that Fawcett's attorney should have engaged in this futile investigation. And there's really nothing about any of these points that a hearing could further flesh out, be it the palpably incredible defense requiring insanity over a year that only manifests itself in a specific way or nothing to show why his attorney should have engaged in this investigation when there is nothing reasonably suggested by crime, client, or his investigation into the prescription medicines that would have indicated this involuntary intoxication defense was viable, especially in the light of the fact that Fawcett's attorney engaged in this investigation and determined that Fawcett was using alcohol, which would, again, remove him from the realm of involuntary intoxication. Mr. Horvitz, I want to give you at least a bit of a hard time about one aspect in your brief. On page 14, you said courts have consistently held that child pornography crimes are generally 10 crimes, which is one of the legal issues being debated here. You've also cited three non-presidential decisions from other surveys, which simply suggests to me that there is a gap. You're not supposed to cite those if they're from our survey. You can do what you want with other surveys, but it suggests to me that there's a gap in precedent on this point. Well, I think it's clear to say maybe there's not unanimous or unanimity about that. I think the general consensus, as what the district court relied on, is that it is a general intent crime. Again, that being said, I don't think this technical nuance about specific or general intent crime is what this court needs to decide on, because, again, there's no reason for this investigation to take place. That being said, I do think the general consensus... Right, that may make a difference in cases or claims of voluntary intoxication, which is, that kind of defense is meant to undercut the menstrual element to the offense. We're in the domain of insanity defense, essentially. It's an excuse defense, or an incapacity defense, which is different, and I think applies to both specific and general intent crimes. That's true, and I do want to... I just want to say, I think this is sort of far-fetched from the things this court needs to decide. However, involuntary intoxication has been used in a diminished capacity way, too, outside this court's zine, from this court's precedence, where the defendant was making a very similar claim that he was unconscious based on intoxication. He was using that to combat an injury that this court treated as a diminished capacity. So I think there's really some discrepancy in the circuit court's how this defense actually works. Now, I know that Fawcett seems to now be more targeting to insanity, and in that case, I would agree that that need distinction doesn't actually matter, but to the extent that it's treated as a diminished capacity, which it has been in other courts and in this court, that would be relevant. But again, I think that's far-fetched from the questions that really matter, that Fawcett cannot show prejudice. There's no reason for his attorney to engage in this investigation, and he has still not shown what this investigation could have or would have shown that would have placed him in the involuntary intoxication realm. If there are no further questions, we would ask this court to confirm that this court without hearing. Thank you. Thank you, counsel. Gary, another minute. Very briefly, I want to point out, I want to stress that at all points in the 2235 proceeding, Mr. Fawcett was pro se. He was proceeding pro se. And it's not clear to me how he would have gotten the very evidence that we need, which would have involved medical analysis and would have involved the sort of thing that an evidentiary hearing could answer and could clear up. And indeed, an evidentiary hearing could also have testimony from Mr. Marsh, from defense counsel. Those are both things that would transform the record and would provide Mr. Fawcett something that a proceeding pro se cannot provide. Quickly, I would also point out that he was charged with both possession and production. And the defense and the mitigating factors might apply to one and not to the other. There was a different time frame. There's different ways that that played out. There's different factual questions. And simply, since the defense court is skeptical that it's an application to one or the other, I would point out that there is a possibility that it would apply differently to a different one. And lastly, we're not seeking a new life in rule. We're seeking a new rule where there are significant red flags on the record and medical records in front of the counsel. There seems to be some indication that the counsel redeemed those records and allowed, and made it an informed decision, and allowed his trial to make an informed decision. Thank you, Your Honor. Thank you, Your Honor. Thanks to both counsel. And the case will be taken under advisory.